```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                FORT MYERS DIVISION

LAWRENCE CHAMBERLAIN            *

              Plaintiff         *

          vs.                   *   CASE NO. 3:09-CV-10809

R.J. REYNOLDS TOBACCO COMPANY,  *
Individually and as Successor
By Merger to the BROWN &        *
WILLIAMSON TOBACCO CORPORATION,
and LORILLARD TOBACCO COMPANY   *

              Defendants        *

*     *     *     *     *     *     *     *     *
       MEMORANDUM AND ORDER RE: COSTS AND FEES
```

The Court has before it Defendants' Motion to Alter or Amend Judgment Pursuant to Rule 59(e) [Document 259], Defendants' Motion for Attorneys' Fees [Document 260] and the materials submitted relating thereto. The Court has considered the materials submitted by the parties and finds a hearing unnecessary.

I.   BACKGROUND

In January 2008, Plaintiffs Lawrence Chamberlain ("Mr. Chamberlain"), and his wife Judith ("Mrs. Chamberlain"), sued R.J. Reynolds Tobacco Company ("Reynolds"), Philip Morris USA Inc. ("PM"), Lorillard Tobacco Company ("Lorillard"), and Liggett Group LLC ("Liggett"), seeking money damages for injury caused by

smoking the Defendants' cigarettes. The Court (Judge Young) granted summary judgment with regard to Mrs. Chamberlain's claims and all claims against PM and Liggett were resolved by settlement, leaving Mr. Chamberlain's claims against Reynolds and Lorillard (sometimes referred to herein as "Defendants") to proceed to trial.

In the course of Plaintiffs' unsuccessful settlement negotiations with Reynolds and Lorillard:

- On April 26, 2013, Plaintiffs made an Offer of Judgment[1] pursuant to Florida Statute 768.9, proposing to settle all claims with each Defendant for $30,000 each.

- Defendants served Proposals for Settlement:

    o Reynolds' proposed $7,000[2] in February 2013 and $30,000[3] in August 2013.

    o Lorillard's proposed a total of $10,000[4] in June 2013.

The case proceeded to an eight-day trial in November 2013. The jury found that Mr. Chamberlain had failed to prove that he was a member of the Engle class. Verdict 1 [Document 244]. Based on the jury's verdict, judgment was entered for the Defendants on

---

[1] See Document 260-5.
[2] See Document 260-4.
[3] See Document 260-8.
[4] Comprised of $9,500 to Mr. Chamberlain and $500 to Mrs. Chamberlain prior to her claim being dismissed by summary judgment on September 16, 2013. See Documents 260-6 and 260-7.

2

November 19, 2013 but providing that the parties were to bear their own respective costs.  Judgment [Document 258].

Defendants timely filed the instant motions seeking attorneys' fees under Florida's offer of judgment statute, Fla. Stat. § 768.79, and an award of costs.

II. DISCUSSION

   A. Costs

Rule[5] 54(d) states, in pertinent part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  In the Eleventh Circuit, there is a "strong presumption that a prevailing party is entitled to costs[,]" Matthews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007), but the Court remains vested with discretion to determine whether costs should be awarded in a particular case. Chapman v. AI Transp., 229 F.3d 1012, 1038 (11th Cir. 2000) (en banc).

"[W]here the trial court denies the prevailing party its costs, the court must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary

---

[5]   All references herein to Rules are to the Federal Rules of Civil Procedure unless otherwise stated.

3

power." Gilchrest v. Bolger, 733 F.2d 1551, 1557 (11th Cir. 1984).

Defendants contend that the Court's stated reasons for denying costs[6] are not adequate in light of Eleventh Circuit decisions. See, e.g., Chapman, 229 F.3d 1012; Pickett v. Iowa Beef Processors, 149 F. App'x 831 (11th Cir. 2005). Mr. Chamberlain does not provide contrary authority, merely stating the conclusory contention that the Court has acted within its discretion. If the Court had the discretion to deny costs in the instant case, it would not award them. However, in view of the unrefuted authority cited by Defendants, the Court concludes that it is required to award costs to the Defendants.

B. Attorney's Fees

1. Award

Florida's offer of judgment statute provides that if a defendant "files an offer of judgment which is not accepted within 30 days, it is entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability." Fla. Stat. § 768.79(1). If, however, the court determines that

---

[6] "Due to the closeness and difficulty of the issues decided, Plaintiff's good faith in pursuing the action, and the grossly disparate economic status of the parties." Judgment [Document 258].

4

the offer was not made in good faith, it may decline to award attorney's fees.  § 768.79(7)(a); see also McMahan v. Toto, 311 F.3d 1077, 1083 (11th Cir. 2002) ("If an offer satisfies the requirements of § 768.79(1)-(6), . . . [t]he sole basis on which a court can disallow an entitlement to an award of fees is if it determines that [the] offer was not made in good faith." (citation and internal quotation marks omitted)).

"The burden is on the offeree to prove the absence of good faith."  JES Properties, Inc. v. USA Equestrian, Inc., 432 F. Supp. 2d 1282, 1295 (M.D. Fla. 2006).  "[S]o long as the offeror has a basis in known or reasonably believed fact to conclude that the offer is justifiable, the good faith requirement has been satisfied."  Arrowood Indem. Co. v. Acosta, Inc., 58 So. 3d 286, 289 (Fla. Dist. Ct. App. 2011)(quoting Dep't Highway Safety & Motor Vehicles v. Weinstein, 747 So. 2d 1019, 1021 (Fla. Dist. Ct. App. 1999)).

The Court must evaluate the facts and circumstances surrounding Defendants' offers to determine if Mr. Chamberlain has satisfied his burden of demonstrating that Defendants' offers were not made in good faith. See Gurney, 889 So. 2d at 99 ("The good faith inquiry requires a trial court to review the facts and circumstances known to the offeror at the time it made the offer." (internal citations omitted)).

The good faith inquiry is both objective and subjective. Arrowood, 58 So. 3d at 289-90. Objective factors relevant to a finding of good faith include the amount of the offer, the potential liability, the timing, the complexity of the case, and "the totality of the whole case record." Id. at 289. A court is also to consider the offeror's justification for its offer to determine if it "had a subjectively reasonable belief on which to base its offer." Id. at 290.

Mr. Chamberlain asserts that Defendants' settlement offers were not made in good faith,[7] so they are not entitled to recover attorneys' fees under Florida's offer of judgment statute. Reynolds made its first offer of $7,000 on February 13, 2013, and Lorillard made its offers totaling $10,000 on June 14, 2013. On August 23, 2013, Reynolds offered Mr. Chamberlain $30,000. The offers were rejected.

---

[7]   Mr. Chamberlain relies in part on the reasoning articulated by Magistrate Judge Toomey's Report and Recommendation in Pickett v. R.J. Reynolds, Case No. 3:09-cv-10116-RBD-JBT, Doc. 194 (Feb. 27, 2013), adopted by Judge Roy B. Dalton, Jr. on June 4, 2013. Defendants assert that the Pickett decision is inapplicable and wrongly decided. On appeal, the decision was affirmed by a short unpublished decision finding no clear error or abuse of discretion by the district court. Pickett v. R.J. Reynolds Tobacco Co., Case No. 13-13212 (11th Cir. 2013). The Court, however, must decide the good faith question in this case in view of the facts and circumstances of this case, which differ from those in the Pickett case. See Gurney v. State Farm. Mut. Auto. Ins. Co., 889 So. 2d 97, 99 (Fla. Dist. Ct. App. 2004) ("Whether an offer is made in good faith is a matter of discretion with the trial court after considering the circumstances at the time the offer was made.").

Mr. Chamberlain asserts that the Reynolds and Lorillard offers are nominal, even lumped together for a total from both Defendants of $40,000. Mr. Chamberlain contends that Defendants' June and August offers should have been informed by the April 1 verdict totaling $26 million in Searcy,[8] a federal Engle progeny case involving a lung cancer claim. The $39,500 offered to Mr. Chamberlain by Reynolds and Lorillard represents less than two-tenths of one percent of the verdict obtained in Searcy. In Mr. Chamberlain's view, the offer was "clearly nominal," in comparison to the risk of liability and exposure to damages. However, Mr. Chamberlain's characterization of the Defendants' post-Searcy offers as "clearly nominal" is hardly consistent with his own post-Searcy offer to settle all claims with each Defendant for $30,000.

The settlements resolving the claims of other Wave 3[9] plaintiffs, both pre- and post- Searcy,[10] are pertinent. For

---

[8] See Searcy v. R.J. Reynolds Tobacco Co., Case No. 3:09-cv-13723-MMH-JBT, Documents 251 and 253 (Apr. 1, 2013). The court later remitted the verdict to $6 million in compensatory damages and $10 million each in punitive damages from the two defendants. See Order, Searcy, Document 287 (Sep. 11, 2013).

[9] The Jacksonville judges originally responsible for all of these cases created this group of 34 cases with similar claims with viable plaintiffs that were smokers who had attained the age of 80 or more. Some had more serious illnesses than others.

[10] Information regarding these settlements is taken from the Declaration of David M. Monde [Document 260-19]. Mr. Chamberlain did not dispute the numbers provided, stating only that the settlements accepted by other plaintiffs in Wave 3 does not

7

example, during the mediation sessions in late 2012, 15 of the 34 plaintiffs in Wave 3 settled their claims for amounts ranging from $8,000 to $22,000 in total from all four defendants. Over the next eight months, every other case in Wave 3 settled, with settlements ranging from $0 to $28,500 in total from all four defendants. Most of these settlements were after the Searcy verdict. The average settlement was for less than $10,000 total from all four defendants.

The offers were made in light of the known outcomes of the thirteen previously tried Engle progeny federal cases. These cases, all presenting wrongful death claims, resulted in six defense verdicts, two verdicts awarding less than $10,000, two awarding less than $1 million, one awarding a bit more than $4 million, and the $26 million Searcy verdict. Thus, the defense essentially prevailed altogether in 8 of 13 trials. Moreover, it was apparent that, fortunately for Mr. Chamberlain from a health point of view, he did not suffer in a fashion that made it likely that he would receive a million dollar, much less multi-million dollar award from Reynolds. As to Lorillard, it was unlikely that anything more than a nominal award could be obtained.[11]

---

demonstrate good faith but are merely generalized, statistical observations.

[11] The instant case is the second lawsuit case that Mr. Chamberlain filed against various tobacco companies. His first case was filed in Florida state court and did not include

8

Defendants aver that they continued to engage in good faith settlement discussions even after the Proposals for Settlement expired. Mr. Chamberlain does not deny that Reynolds accepted a suggestion from Judge Young to let him help mediate the case, but Mr. Chamberlain declined.

The Court finds no bad faith in Defendants' conclusion, based on their view of the evidence available from discovery, that there was a low risk of liability or, even if there were a liability finding, a low risk of a substantial recovery.

Lorillard sent Plaintiffs a cover letter with its proposed settlement, referring to "some of the reasons" why the offer should be accepted.

> Initially, based on the totality of the discovery taken to date, including, but not limited to, deposition testimony in this case, Plaintiffs are unlikely to be able to establish that Mr. Chamberlain was addicted to cigarettes containing nicotine and that said addiction was a substantial contributing cause of his injuries.
>
> Additionally, we believe Plaintiffs' claims against Lorillard will also fail because of (a) Mr. Chamberlain's knowledge of the risks associated with smoking throughout his life; and (b) the contradictory and inconsistent

---

Lorillard as a defendant, and no Lorillard brands were identified during discovery as brands that Mr. Chamberlain smoked. During closing argument in the instant case, Mr. Chamberlain's counsel admitted there was a conflict in the evidence about whether Mr. Chamberlain ever smoked Lorillard cigarettes, and if so, for how long, based primarily on the answers to interrogatories. Trial Tr., Nov. 15, 2013 101:12-102:10.

9

> testimony regarding his smoking history, which is ultimately not credible.
>
> Lastly, even should Plaintiffs be able to prove the necessary elements showing Mr. Chamberlain is an Engle class member, they will be unable to establish significant damages in this case. Mr. Chamberlain is in good health for a man his age (as he himself has acknowledged) and has been cancer-free since his diagnosis and lung resection in 1994. He continues to maintain an active and productive life with his wife and family.

Document 260-9.

The "bottom line" is that the Court does not find Reynolds' offer to settle for $30,000 to be made in bad faith.  Indeed, the fact that Plaintiffs had, themselves, previously offered to settle their claims against Reynolds for the same amount may well, in and of itself, be conclusive.  The Lorillard offer of $10,000, i.e. one third of the Reynolds offer, was reasonable, particularly in light of the smaller, if not de minimus, potential recovery from Lorillard.

    2.   Amount

Defendants each request $53,100[12] for attorneys' fees based on the in-court trial hours of their two lead attorneys.  The rate of $450 per hour for trial attorney work has been accepted as reasonable in other Engle progeny  cases.  See Defs.' Mot.,

---

[12]    59 reported trial hours x $450/hour x 2 trial attorneys.

Ex. 13, 14 [Documents 260-14 and 260-15]. The Court finds no reason to question the rate.

The Court, having presided over the trial, finds Defendants' claim for the in-court professional time for two attorneys to be reasonable. Two attorneys per party were needed for efficient presentation of the case and Mr. Chamberlain had two attorneys presenting his case with additional counsel providing out of court assistance.

The limitation of the fees request to in-court time renders the 59 hours claim reasonable.

Plaintiffs seek discovery with regard to the fee claim. However, the Court finds that two counsel for each Defendant devoted 59 hours to in-court time, that two trial counsel were reasonably necessary, and that the $450 per hour rate was reasonable. Hence, in the absence of any apparent purpose for discovery, the Court finds no reason to defer decision on Defendants' fee request.

Accordingly, the Court shall award each of Reynolds and Lorillard legal fees in the amount of $53,100.

III. CONCLUSION

For the foregoing reasons:

    1. Defendants' Motion to Alter or Amend Judgment Pursuant to Rule 59(e) is GRANTED

    2.    Defendants' Motion for Attorneys' Fees is GRANTED.

    3.    An Amended Judgment shall be issued herewith.

SO ORDERED, on <u>Wednesday, May 28, 2014</u>.

/s/_____
Marvin J. Garbis
United States District Judge
